THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOE MALVEAUX *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 62103

Opinion filed July 29, 1976.—Rehearing denied September 2, 1976.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Joe Malveaux and Eddie Mitchell, were charged with the murder of Howard Moore and the aggravated battery of Johnny Carter. A jury found defendants guilty of both crimes, and they both were sentenced to concurrent terms of 14 to 30 years and 3 to 10 years in the penitentiary. On appeal they contend that the State failed to prove them guilty beyond a reasonable doubt, and that the court committed reversible error in the giving of a certain instruction. A third person was

tried separately for the same crimes, was found guilty, and was sentenced to concurrent terms of 40 to 100 years and 3 to 10 years. This court recently affirmed that conviction. *People v. Parker* (1976), 40 Ill. App. 3d 597, 352 N.E.2d 394.

The factual circumstances of this case are set out in detail in the *Parker* opinion, and consequently we will state only the facts required for a discussion of the issues presented to us. Magdeline Moore, Moore's widow, testified that on August 10, 1973, she was living with her husband and two children in a first-floor apartment in the city of Chicago. Her brother, Johnny Carter, lived with them. The two defendants and Parker lived in a third-floor apartment in the same building. On the day in question, Mrs. Moore, her children, and Mitchell had been to the beach. When they returned home, Parker and Malveaux informed Mitchell that someone had broken into their apartment and had taken Mitchell's television and tape recorder. Mitchell asked Moore if he knew anything about the burglary and Moore stated that he did not.

At about 10 p.m. Mitchell came to the Moore apartment and requested the family to come up to his apartment. What followed was an eight-hour ordeal for Moore culminating in Parker beating him severely about the head with two baseball bats. As a result, Moore died approximately three weeks later.

At about 12:30 a.m., Carter returned home from work and was invited by Malveaux to the upstairs apartment. After being beaten along with Moore for several hours, Carter jumped out the window of the third-floor apartment to escape. Carter was bleeding profusely, and had lacerations on the head, face, and scalp. He had abrasions and contusions on his shoulders, legs, and arms. He sustained a cerebral concussion and a fracture of the left shoulder blade. Despite his injuries, he was able to run to a restaurant. The police were notified at about 5 a.m. and arrested defendants at the apartment, where they also recovered the bloodied baseball bats. Moore was taken from the apartment to the hospital.

Mrs. Moore testified that when the Moore family followed Mitchell upstairs, once inside the apartment, Mitchell locked and bolted the door, then nailed it shut. Mitchell stated that no one was going to leave until his belongings were returned. After several minutes of conversation, defendants left the apartment, instructing Parker not to let the Moores leave. Parker had two baseball bats at his side. After he returned, Mitchell struck Moore across the leg three or four times with one of the baseball bats, and later helped Parker put handcuffs on Moore. Mitchell also threw a large knife toward the door, which was in Mrs. Moore's direction. After midnight, the men decided to allow Mrs. Moore and the children to leave the apartment. Mitchell took her downstairs, where they saw Carter. Mitchell warned her not to say anything to Carter. Malveaux

joined them and invited Carter to a party in the upstairs apartment. Mitchell warned Mrs. Moore not to leave her apartment and not to call the police. She complied with these instructions.

When Carter entered the upstairs apartment, he saw blood on Moore's face and shirt. Malveaux drew a knife and told Carter to sit down and not to move. Mitchell held a butcher knife. Carter replied to a question by Malveaux that he knew nothing about the stolen articles and produced a receipt for his day's pay. Despite this, Parker struck Moore and Carter alternatively with a baseball bat, breaking one of the bats in the process. Malveaux punched Carter with his one hand while pointing a knife at him with the other. Mitchell, armed with the butcher knife, guarded the front door.

Defendant Malveaux testified that on the evening in question he and Mitchell discovered that their apartment had been burglarized. Moore came to their apartment and accused another tenant of taking the property. Defendants went to check and, when they returned, Moore and Parker were arguing. Subsequently, Carter came up to the apartment. After visiting for an hour, Carter went out and returned with beer and wine. Carter, Moore, and Parker, after drinking, resumed arguing. Parker began striking Carter with the baseball bat. The witness and Mitchell tried to restrain Parker, but were unsuccessful at first. When they finally pulled Parker away, Carter jumped out the window. Parker began striking Moore with the bat. Defendants vainly attempted to calm Parker down, and were trying to call the police but they did not have time. Malveaux also testified that he broke his thumb trying to restrain Parker.

Defendants' initial contention is that the State failed to prove them guilty of the crimes charged beyond a reasonable doubt. They argue that the testimony of the State's witnesses was incredible and as a matter of law was insufficient to support the convictions. They contend in the alternative that the evidence adduced by the State, even if believed, did not establish their accountability for the murder of Moore and the aggravated battery of Carter. In *People v. Parker*, we considered and rejected Parker's similar contention that the testimony of Mrs. Moore and Carter was unbelievable and incredible. Consequently, in the present case, it is necessary only to consider whether the State established defendants' accountability for the crimes.

■■ Where there is proof of a common plan or design to do the acts alleged plus proof of affirmative conduct of aiding and abetting the commission of the crimes alleged, defendants may be held accountable. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.) One may even aid and abet without actively participating in an overt act. (*People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693.) In the present case, defendants actively participated in both crimes. After the Moores entered

the upstairs apartment, Mitchell announced that no one would leave until his belongings were returned, and he then nailed the door shut. When Mitchell left for a short time, he instructed Parker not to allow Moore to leave the apartment. Mitchell struck Moore across the legs with a baseball bat, and helped Parker handcuff Moore. Mitchell threw a knife at the door once and, holding a knife, guarded the door while Parker beat Moore with the bat. Malveaux held a knife against Carter, and punched him with the other hand. Additionally, throughout the long evening, both defendants prevented the victims from escaping. Both defendants aided, abetted, and promoted the killing of Moore and the vicious beating of Carter. The court correctly found them accountable for the crimes.

■■ We find no merit in defendants' next contention that the trial court erred in giving over their objection the first paragraph of Illinois Pattern Jury Instruction (IPI) Criminal No. 3.02 relating to circumstantial evidence. They maintain that the giving of the instruction was error because all the evidence presented was direct.

There was a great deal of circumstantial evidence presented at trial. The most significant piece of circumstantial evidence adduced was the fact that Carter jumped from a third-floor window to escape. Additionally, the bloody bats recovered by the police were introduced into evidence and Carter exhibited the scars he had received from the beating. The instruction properly was given.

■■ Defendants urge in the alternative that since the first paragraph of the circumstantial evidence instruction was given it was reversible error not to give the second paragraph of the instruction. That part of the instruction is as follows:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The explanatory comment in I.P.I. proposes that the second paragraph of the circumstantial evidence instruction should be given only when the proof of guilt is *entirely* circumstantial. (Also see *People v. Brown* (1974), 56 Ill. 2d 312, 307 N.E.2d 356; *People v. Miller* (1974), 19 Ill. App. 3d 103, 311 N.E.2d 179.) In the present case, both direct and circumstantial evidence was presented, and the second paragraph of the instruction was properly omitted.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.